J-S27035-23

2024 PA Super 3

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                        :         PENNSYLVANIA
                                          :
                v.                             :
                                          :
                                          :
CHRISTOPHER RAY LAMONT         :
                                          :
            Appellant             :    No. 112 MDA 2023

Appeal from the Judgment of Sentence Entered July 7, 2022
In the Court of Common Pleas of Lycoming County
Criminal Division at No(s): CP-41-CR-0000356-2020

BEFORE: BENDER, P.J.E., BOWES, J., and SULLIVAN, J.

OPINION BY SULLIVAN, J.:               **FILED: JANUARY 9, 2024**

Christopher Ray Lamont ("Lamont") appeals from the judgment of sentence entered following his jury convictions for two counts of indecent assault of a child, and one count each of aggravated indecent assault of a child, corruption of minors, and indecent exposure.[1] After careful review, we affirm in part, vacate in part, and remand for resentencing.

We take the underlying facts and procedural history in this matter from the trial court's opinion and our independent review of the certified record. In 2019, when she was nine years old, the Victim disclosed to her grandmother ("Grandmother"), that Lamont, who was Grandmother's boyfriend, sexually molested her. **See** Trial Court Opinion, 1/12/23, at 2-3. The Victim lived within walking distance of Grandmother's house. **See id**. at 3. Lamont and

---

[1] **See** 18 Pa.C.S.A. §§ 3126(a)(7), 3125(b), 6301(a)(1)(ii), and 3127(a).

Grandmother would watch the Victim when the Victim's mother ("Mother") was working. *See id*. at 3. Grandmother confronted Lamont, who admitted touching the Victim, but said it was an "accident" and promised to apologize to the Victim. *Id*. at 3 (quoting N.T., 3/22/22, at 47).

After Lamont apologized, the Victim told Grandmother Lamont had molested her several times. *See id*. Grandmother again confronted Lamont who "just stood there." *Id*. (quoting N.T., 3/22/22, at 47). Grandmother left for work and, when she returned, Lamont had fled, leaving all his possessions, including important documents in her home. *See id*. at 3. Grandmother contacted the police. *See id*.

Following his departure, Lamont contacted Grandmother by phone. *See id*. at 3-4. Lamont begged her not to press charges, apologized, threatened to commit suicide, and claimed he did not know why he had molested the Victim. *See id*. Grandmother put the call on speakerphone and both Mother and Grandmother's best friend overheard the conversation. *See id*. at 4.

Before trial, the Commonwealth filed a notice pursuant to 42 Pa.C.S.A. § 5985 of its intention to allow the Victim to testify by a contemporaneous alternate method. Notice, 1/12/22, at 1 (unnumbered). Following a hearing, the trial court granted the motion and the Victim testified at trial via video. A jury convicted Lamont of the above-cited charges.

At sentencing, new counsel represented Lamont. The trial court sentenced Lamont to an aggregate term of incarceration of twelve to twenty-

five years, followed by three years of probation. The trial court did not find

Lamont to be a sexually violent predator. The trial court sentenced Lamont

to serve this sentence ("Lycoming sentence") consecutively to a sentence he

received in Monroe County for a violation of probation ("revocation sentence").

The trial court, when awarding credit for time served, attempted to parse the

time Lamont was in custody for the revocation sentence from the Lycoming

sentence. Lamont timely filed a post-sentence motion, which the trial court

denied following a hearing.[2] The instant, timely[3] appeal followed.[4]

On appeal, Lamont raises the following issues:

I.      Did the [trial] court err by permitting the Victim to testify
        by contemporaneous electronic means?

II.     Did the [trial] court abuse its discretion by permitting the
        Commonwealth to reopen their case to call Assistant Police
        Chief Jason Bolt to testify?

III.    Did the [trial] court abuse its discretion by denying defense
        counsel the opportunity to question the Victim about

_____

[2] The tenth day after sentencing fell on a Sunday; therefore, Lamont's post-sentence motion filed on July 18, 2022, was timely. **See** 1 Pa.C.S.A. § 1908. We also note more than 120 days passed between the filing of the post-sentence motion and the trial court's denial of it. **See** Pa.R.Crim.P. 720(B)(3)(a).

[3] This Court has found a breakdown in the trial court when a post-sentence motion is not disposed within 120 days and/or the clerk of the courts has not deemed the motion denied by operation of law and sent a copy of the order to the parties. **See Commonwealth v. Perry**, 820 A.2d 734, 735 (Pa. Super. 2003). When a trial court denies a post-sentence motion after the 120-day period and the appellant, as he did here, files a notice of appeal within 30 days of the denial, the appeal is deemed timely. **See id**.

[4] Lamont and the trial court complied with Pa.R.A.P. 1925.

- 3 -

whether she knew of [] Lamont's relationship with a woman other than the Victim's Grandmother as a way of establishing bias or motive?

IV. Did the [trial] court err by failing to award [] Lamont credit for time served prior to sentencing?

Lamont's Brief at 7 (unnecessary capitalization omitted).

In his first issue, Lamont argues the trial court erred in allowing the minor Victim to testify by a contemporaneous alternative method rather than in the courtroom. *See* Lamont's Brief at 13-17.

Our standard of review is settled:

The admissibility of evidence is at the discretion of the trial court and only a showing of an abuse of that discretion, and resulting prejudice, constitutes reversible error.

The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

*Commonwealth v. Hudson-Greenly*, 247 A.3d 21, 24 (Pa. Super. 2021) (some quotation marks and citations omitted).

The Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . ." Article 1, Section 9 of the Pennsylvania Constitution provides: "In all criminal prosecutions the accused hath a right ... to be confronted with the witnesses against him . . ..["2] With regard to the Confrontation Clause, the Pennsylvania Constitution provides a

criminal defendant with the same protection as the Sixth Amendment[.]

> [2] The Pennsylvania Constitution previously required "face to face" confrontation, and under such provision, the use of videoconferencing [] to present testimony was found to be unconstitutional. ***See Commonwealth v. Ludwig***, 594 A.2d 281 (Pa. 1991). The Pennsylvania Constitution was amended in 2003, removing the "face to face" language.

***Commonwealth v. Atkinson***, 987 A.2d 743, 745 and n.2 (Pa. Super. 2009) (citation and footnote omitted, some citation formats modified).

Section 5985 of the Judicial Code governs testimony by a contemporaneous alternative method:

> **(a) Contemporaneous alternative method.**—Subject to subsection (a.1), in any prosecution or adjudication involving a child victim [ ], the court may order that the testimony of the child victim [ ] be taken under oath or affirmation in a room other than the courtroom and transmitted by a contemporaneous alternative method. Only the attorneys for the defendant and for the Commonwealth, the court reporter, the judge, persons necessary to operate the equipment and any person whose presence would contribute to the welfare and well-being of the child victim [ ], including persons designated under section 5983 (relating to rights and services), may be present in the room with the child during his testimony. The court shall permit the defendant to observe and hear the testimony of the child victim [ ] but shall ensure that the child cannot hear or see the defendant. The court shall make certain that the defendant and defense counsel have adequate opportunity to communicate for the purposes of providing an effective defense. Examination and cross-examination of the child victim [ ] shall proceed in the same manner as normally permitted.

> **(a.1) Determination.**—Before the court orders the child victim [ ] to testify by a contemporaneous alternative method, the court must determine, based on evidence presented to it, that testifying either in an open forum in the presence and full view of the finder of fact or in the defendant's presence ***will result in the child***

> ***victim [ ] suffering serious emotional distress that would substantially impair the child victim's [ ] ability to reasonably communicate***. In making this determination, the court may do all of the following:
>
>> (1) Observe and question the child victim [ ], either inside or outside the courtroom.
>>
>> (2) Hear testimony of a parent or custodian or any other person, such as a person who has dealt with the child victim [ ] in a medical or therapeutic setting.

42 Pa.C.S.A. § 5985(a), (a.1) (emphasis added).[5]

In ***Commonwealth v. Strafford***, 194 A.3d 168 (Pa. Super. 2018), this Court rejected the notion a child victim must exhibit a particular degree of emotional distress before allowing testimony by a contemporaneous alternate method. This Court stated:

> Insofar as Appellant suggests that a child victim must essentially break down in [the trial court's] presence before permitting testimony by contemporaneous alternative method, we need not belabor the absurdity of this proposition given our legislature's clear policy expression in this regard. ***See*** 42 Pa.C.S. § 5981 (declaring the General Assembly's intent to provide special procedures as necessary [] to protect [the child victim] and to promote the best interests of victims and material witnesses of this Commonwealth who are under 18 years of age during their involvement with the criminal justice system).

***Strafford***, 194 A.3d at 175 n.5.

_____

[5] We have previously noted "[f]ew published decisions address § 5985, and those that do have not announced a standard for reviewing the trial court's decision." ***Hudson-Greenly***, 247 A.3d at 25 (citation omitted). As we have done in those cases, we will employ the principles of statutory construction to determine whether the Commonwealth complied with the explicit terms of Section 5985. ***See id***.

Lamont argues the Victim's greatest expressed fear was not testifying in front of him but "no one would believe her testimony[.]" Lamont's Brief at 14. Lamont notes the Victim initially testified she felt "'braver' for coming forward." *Id*. (citing N.T., 1/21/22, at 24). Lamont posits the Victim's statements it would be frightening for her to testify in front of him and this would cause her to replay the events in her mind was insufficient to show "she was afraid to speak about her experiences." *Id*. at 15. Lamont maintains the visible changes in the Victim's manner and demeanor during the hearing were not reflective of her fear of testifying in open court but were a "foreseeable change" because of speaking about a traumatic experience. *Id*. at 15-16. Lamont therefore avers the Commonwealth did not meet its burden of showing the Victim would be unable to "reasonably communicate" in his presence. *Id*. at 16.

Our review of the record demonstrates Lamont's arguments lack merit. Here, the trial court held a pre-trial hearing in the courtroom at which Mother and the Victim testified. *See* N.T., 1/21/22, at 2-41. Mother discussed the changes in the Victim's personality since the disclosure, stating the Victim had previously been "involved in almost every sport that you could name, softball, cheerleading, and she no longer does any of them." *Id*. at 9. Mother said the Victim "just doesn't want to — she doesn't have any will to want to do it any more [*sic*]. She barely leaves the house." *Id*. Mother noted the Victim now had mood swings, her temperament changing from "very quiet" to "attacking."

*Id*. Mother averred the Victim was "very nervous and uneasy . . . when she's in front of people." *Id*. at 11. Mother explained the Victim had been very nervous about the prospect of testifying in Lamont's presence and expressed a "sigh of relief" when Mother told her she could testify by video. *Id*. Mother expressed concern that having to testify in front of Lamont would retraumatize the Victim, saying, "[the Victim is] a very, very nervous child so she would be up here probably distracted and not able to focus." *Id*. at 13.

The Victim testified she was "hesitant" and afraid no one would believe her. *Id*. at 23-24. The Victim explained it was "important" when she testified previously that Lamont was not present because it made it "easier", and she was able to "focus" on her testimony and not on the fact Lamont had told her she was a "liar and it never happened." *Id*. at 21. The Victim averred testifying in front of Lamont would make her "anxious" and it "would be scary." *Id*. at 26. She elucidated,

> I'd replay everything that happened, everything he said to me, and I'd probably keep dwelling on it and dwelling on it, probably couldn't stop.

*Id*. The Victim opined testifying in front of a jury would "be scary[]" and she did not know if she could be "as brave." *Id*. at 28. The Victim did not believe she would be able to "tell what happened" in front of Lamont and a jury. *Id*.

The trial court noted on the record the changes in the Victim's demeanor and body language when the Victim thought about testifying in front of Lamont. *See e.g.*, *id*. at 27, 29. The trial court specifically highlighted when

the Victim first spoke with the Court "you were very bubbly, you felt very confident, very proud, and your feelings have changed." *Id*. at 27.

The trial court concluded:

[the trial court is] hearing testimony, . . . looking at [Section] 5985[,] and focusing on that and it's exactly the way [the Commonwealth] said. That's why [the trial court] described [the Victim's demeanor] for the record so that it would be there and not just a change in atmosphere or physical reaction that wasn't captured on the record. [The trial court] wanted to try and do that, [and] the record should reflect that [the Victim's] continuing to look over at counsel table where [Lamont] would be seated. So[,] it wasn't just a knee-jerk reaction, that [the Victim] was really trying to consider it and give the best answer that she could. [The trial court] thought [the Victim] was being really conscientious about that as well. And the more [the trial court] learns about . . . being trauma informed and being trauma sensitive, I think based upon the nature of the charge, how could it not substantially impair [the Victim's] ability to communicate and cause another greater emotional . . . distress? *So[,] it's clear that [the Victim] was distressed as it was here, but that's not with 14 people and other people who would be seated in the courtroom who she wouldn't know*. . . . [The trial court] is satisfied that the Commonwealth has met its burden and [the trial court] is going to allow [the Victim] to testify by contemporaneous alternate method.

*Id*. at 36 (emphasis added).

Thus, the trial court considered both the Victim's and Mother's testimony. The trial court also observed the change in the Victim's demeanor during the hearing and assessed "her state of mind in the scope of the entire circumstances surrounding the proceeding prior to rendering its decision." *See Hudson-Greenly*, 247 A.3d at 27. Lamont asks this Court to disregard Mother's testimony and view the Victim's testimony out of context and to ignore the trial court's observations made on the record. However, the record

reflects the trial court based its decision on the testimony of the Victim and Mother, and its own observations of the Victim, as required by Section 5985. This testimony, as delineated above, along with the trial court's observations, supports its finding that Lamont's "presence would have caused serious emotional distress and impaired the victim's ability to communicate in the courtroom." *Hudson-Greenly*, 247 A.3d at 27.

Critically, while acknowledging an appellant must make more than a "bald assertion of prejudice" Lamont has not shown how the trial court's ruling harmed or prejudiced him at trial. Lamont's Brief at 16-17; *see also Hudson-Greenly*, 247 A.3d at 24, 27.

The trial court instructed the jury both immediately before the Victim's testimony and in its final instructions as follows:

> As you know, witnesses presenting testimony during the trial are normally required to appear before you in person to present their testimony. The laws of Pennsylvania, however, permit testimony of young children to be taken in a setting other than the courtroom and presented through electronic means. This is what occurred with the testimony of [the Victim]. This testimony is to be evaluated by you in the same way in which you will evaluate the testimony of other witnesses in the case.

N.T., 3/22/22, at 19, 94.

"It is well settled that the jury is presumed to follow the trial court's instructions[.]". *Commonwealth v. Faison*, 297 A.3d 810, 828-29 (Pa. Super. 2023) (citation omitted). The trial court's instruction did not lead the jury to believe the Victim was too frightened to testify in the courtroom or would otherwise be traumatized if required to do so. Instead, it led the jury

- 10 -

to believe that this manner of testifying through closed-circuit television was not extraordinary.

For these reasons, we perceive no error or abuse of discretion in the trial court's conclusion the Victim would suffer serious emotional distress which would substantially impair her ability to reasonably communicate if she had been required to testify either in an open forum or in Lamont's presence. Furthermore, Lamont has failed to establish any prejudice resulting from the trial court's decision to allow the Victim to testify by a contemporaneous alternative method. Accordingly, Lamont's first issue does not merit relief.

In his second issue, Lamont maintains the trial court erred when it allowed the Commonwealth to reopen the case to allow Assistant Police Chief Jason Bolt to testify regarding the date of the 911 call and the date the police filed charges against Lamont. *See* Lamont's Brief, at 18-24. We disagree.

We review a trial court's decision to reopen a case for an abuse of discretion. *See Commonwealth v. Best*, 120 A.3d 329, 347 (Pa. Super. 2015). "Under the law of this Commonwealth a trial court has the discretion to reopen a case for either side, prior to the entry of final judgment, in order to prevent a failure or miscarriage of justice." *Id*. (citations omitted). The claim does not merit relief.[6] At the hearing on Lamont's post-sentence motion,

_____

[6] It is questionable whether Lamont preserved the claim because the Commonwealth's request to reopen the record, Lamont's objection, and argument regarding the issue did not take place on the record. *See* N.T.,
*(Footnote Continued Next Page)*

- 11 -

Lamont conceded while he believed the Commonwealth had not met the standard for demonstrating "it was a miscarriage of justice if it didn't come in" he could not show prejudice, "it is harmless [error]." N.T., 10/24/22, at 6. On appeal, Lamont again acknowledges Assistant Chief Bolt's testimony was "cumulative." Lamont's Brief at 23.

The harmless error doctrine "reflects the reality that the accused is entitled to a fair trial, not a perfect trial." *Commonwealth v. Hairston*, 84 A.3d 657, 671 (Pa. 2014).

> Harmless error exists if the record demonstrates either: (1) the error did not prejudice the defendant or the prejudice was *de minimis*; or (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

*Id*. at 671–72.

Here, Lamont admits, and the record confirms, the testimony *was both harmless and cumulative*. *See* N.T., 3/22/22, at 47-48, 63, 78-79; N.T.,

_____

3/22/22, at 74. While the trial court noted the issue on the record, Lamont's only comment of record was his statement, "the opportunity had been had for Assistant Chief Bolt to take the stand. He was not called as a witness." *Id*. at 76. The argument currently advanced on appeal, that this testimony did not show consciousness of guilt because Lamont did not know he was wanted by the police does not appear of record. *See* Lamont's Brief at 20-22. It is settled an appellant cannot present a new legal theory on appeal. *See Commonwealth v. Jefferson*, 256 A.3d 1242, 1261 (Pa. Super. 2021) (*en banc*) (Bowes, J., concurring); Pa.R.A.P. 302(a).

10/24/22, at 6; Lamont's Brief at 23. Thus, even if the trial court erred in allowing the Commonwealth to reopen its case, any such error was harmless. *See Hairston*, 84 A.3d at 671-72. Lamont's second issue does not merit relief.

In his third issue, Lamont claims the trial court abused its discretion by sustaining a Commonwealth objection during Lamont's cross-examination of the Victim. *See* Lamont's Brief at 25-29. We disagree, albeit for different reasons than those expressed by the trial court.[7]

Here, the record reflects the Victim was the first witness at trial. During cross-examination, the following exchange took place:

[Defense Counsel]: And do you know how long — do you know how long your [Grandmother] was with [Lamont]?

[The Victim]: Umm —

[Defense Counsel]: Sorry, I'll repeat. Do you know how long [your Grandmother] was with [Lamont]?

[The Victim]: Maybe about three years. *I don't know*. She didn't tell us before they started dating.

[Defense Counsel]: Okay. I understand. And did he end up hurting [your Grandmother]?

[The Victim]: Um, he had his moments. *Yeah, I guess*.

[Defense Counsel]: And he — did he have a relationship with another woman?

---

[7] *See Commonwealth v. Elliott*, 249 A.3d 1190, 1193 n.3 (Pa. Super. 2021) (noting long-settled doctrine that this Court may affirm the decision of a trial court on any basis.).

[The Commonwealth]: I'm going to object to the relevance Judge.

[Defense Counsel]: Well, I think it's relevant, Judge. It would have to do with bias and motive to lie.

The Court: Can you repeat that?

[Defense Counsel]: Judge, I'm sorry. I said the relevance would be bias and motive to lie with testimony.

The Court: And your question is whether [Lamont] had another girlfriend?

[Defense Counsel]: Correct.

The Court: Okay. Well, I don't see why that would be a motive to lie. I would sustain.

[Defense Counsel]: All right.

The Court: ***Unless you develop it further, I don't see the relevance***.

N.T., 3/22/22, at 34-35 (emphases added). Defense counsel did not attempt to further develop the issue either during cross-examination of the Victim or during cross-examination of Grandmother. ***See id.*** at 35-39, 52-54.

> Our standard of review is well settled: the admissibility of evidence is within the sound discretion of the trial court[,] and we will not reverse absent an abuse of discretion. Likewise, the scope and limits of cross-examination are within the discretion of the trial judge[,] and we review the trial judge's exercise of judgment for a clear abuse of discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

- 14 -

*Commonwealth v. Leap*, 222 A.3d 386, 390 (Pa. Super. 2019) (citations and quotation marks omitted).

Lamont argues the trial court erred in sustaining the objection because "a witness's credibility may be impeached by any evidence relevant to that issue." Lamont's Brief at 25 (citations omitted). Lamont continues:

> [i]n the instant case, [defense] counsel was seeking to show bias based on [Lamont's] tendency to cheat and to become violent with the [Victim's Grandmother]. **If the [Victim] was aware** of the relationship issues between [Lamont] and her [Grandmother] she would have motive to fabricate.

*Id*. (emphasis added).

In its opinion, the trial court noted it was "unclear where defense counsel was going with the line of questioning." Trial Court Opinion, 1/12/23, at 9. The court further explained:

> In retrospect, although not clear to the [c]ourt at the time, it may have been an arguable area of relevance if the defense would try to show [Lamont] was unfaithful to [Grandmother] and she retaliated against him by having [the Victim] make false sexual allegations against him.
>
> We believe the question [to the Victim] at the time did not have any significant relevance, although there may have been relevance if defense posed the question to [Grandmother].
>
> Conversely, if the question is deemed relevant of the child, without confronting [Grandmother] about the matter, we believe any error made by the [c]ourt would be harmless error.

*Id*.

Here, the record reflects Lamont never sought to lay the foundation for this line of questioning. In his opening statement, Lamont did not claim the

Victim had a motive to lie or Grandmother had a motive to encourage her to lie.[8]  *See* N.T., 3/22/22, at 15-17.  Rather, Lamont's defense was: (1) no one other than the Victim witnessed the abuse; (2) there was no physical corroboration of abuse; and (3) the police conducted a shoddy investigation. *See id*. at 16.

Leaving aside the issue of whether it was plausible the Victim, who was nine years old at the time she made the allegations, was capable of fabricating detailed allegations of sexual assault to avenge her Grandmother's honor, the record at the time defense counsel cross-examined the Victim was devoid of any evidence which demonstrated Lamont either cheated on Grandmother or was violent.  Moreover, counsel did not lay a foundation which showed the then nine-year-old Victim was aware of the intimate details[9] of Lamont and Grandmother's relationship.[10]  Counsel had not questioned the Victim about

_____

[8] The notes of testimony from the sentencing hearing reflect Lamont had a child with another woman while he was involved with Grandmother.  *See* N.T., 7/7/22, at 13, 27-28, 31.  The record does not reflect whether Grandmother or the Victim was aware of the relationship.  *See id*.

[9] In fact, it seems as though the Victim was not aware, as the record at sentencing demonstrates the Victim's estimate of how long Grandmother and Lamont were involved was not accurate.  *See* N.T., 3/22/22, at 34; N.T., 7/7/22, at 20, 31.

[10] We note both defense counsel's question about whether Lamont "hurt" Grandmother and the Victim's answer were ambiguous.  *See* N.T., 3/22/22, at 34.  It is not clear what type of "hurt" defense counsel was referencing or how the Victim understood the question.

whether Grandmother, or anyone else, had pressured her to make the allegations against Lamont. **See id**. at 33-39. Thus, the Commonwealth properly objected to the question albeit for a different reason. Further, the trial court properly sustained the objection, because Lamont had not laid a foundation or developed the record to show either he was cheating on Grandmother or the Victim had any knowledge of his cheating. Thus, there was no clear abuse of discretion in the preclusion of this question.[11] **See Leap**, 222 A.3d at 390. Lamont's third issue does not merit relief.

In his final issue, Lamont argues the trial court did not properly award him credit for time served. Lamont's Brief at 30-34. A claim the court failed to award credit for time served implicates the legality of sentence. **See Commonwealth v. Clark**, 885 A.2d 1030, 1032 (Pa. Super. 2005). Therefore, our standard of review is *de novo* and our scope of review is plenary. **See Commonwealth v. Wolfe**, 106 A.3d 800, 802 (Pa. Super. 2014).

Sentencing credit for time served is provided for pursuant to 42 Pa.C.S.A. § 9760, which states in pertinent part:

> (1) Credit against the maximum term and any minimum term shall be given to the defendant for all time spent in custody as a result of the criminal charge for which a prison sentence is imposed or as a result of the conduct on which such a charge is based. Credit

---

[11] Moreover, the trial court left open the possibility it would revisit its ruling if Lamont developed the issue. **See** N.T., 3/22/22, at 35. Lamont did not attempt to develop the claim either during his questioning of the Victim or of Grandmother. **See id**. at 35-39, 52-54.

shall include credit for time spent in custody prior to trial, during trial, pending sentence, and pending the resolution of an appeal.

* * *

(4) If the defendant is arrested on one charge and later prosecuted on another charge growing out of an act or acts that occurred prior to his arrest, credit against the maximum term and any minimum term of any sentence resulting from such prosecution shall be given for all time spent in custody under the former charge that has not been credited against another sentence.

42 Pa. C.S.A. § 9760(1) and (4).

Here, the record reflects Lamont was incarcerated, *in lieu* of bail, on the instant charges on January 27, 2020. *See* N.T., 7/7/22, at 11. At the time of incarceration, Lamont was on probation from an unrelated matter in Monroe County. *See* Trial Court Opinion, 1/12/23, at 12. Monroe County lodged a detainer on February 3, 2020. *See* N.T., 10/24/22, at 11. On August 17, 2020, the Court of Common Pleas of Monroe County revoked Lamont's probation and sentenced him to "be incarcerated in the Monroe County Correctional Facility for a period of not less than ninety [] days, nor more than one [] year." Order, 8/17/20, at 1 (unnumbered). The Monroe County Court of Common Pleas found Lamont was "entitled to a time credit from February 3, 2020." *Id*. The order did not address parole. *Id*. There is no documentation of record as to whether Monroe County ever paroled Lamont or if he served the entire one year. Following the completion of the revocation sentence, Lamont remained in custody on the instant matter.

On July 7, 2022, the trial court sentenced Lamont in the instant matter. The trial court ordered the Lycoming sentence to run consecutively to the revocation sentence. *See* Sentencing Order, 7/7/22, at 3 (unnumbered). With respect to time served, the trial court credited Lamont for time served against the Lycoming sentence for the periods between January 27, 2020, and February 21, 2020, and August 18, 2020, to July 6, 2022, resulting in a total credit of 712 days. *See id*. at 2 (unnumbered).

In his post-sentence motion, Lamont challenged both the discretionary aspects and legality of his sentence. *See* Post-Sentence Motion, 7/18/22, at 3 (unnumbered). Lamont argued the trial court abused its discretion in imposing the Lycoming sentence to be served consecutive to rather than concurrently with the revocation sentence.[12] *See id*. Lamont also claimed the trial court failed to properly credit him for time served. *See id*.

_____

[12] To the extent Lamont may be arguing the trial court erred in running the Lycoming sentence consecutively to the revocation sentence, he waived the claim. *See* Lamont's Brief at 30. Lamont did not raise this issue in either his Rule 1925(b) statement or in the statement of questions involved in his brief. *See* Concise Statement of Errors Complained of on Appeal, 2/10/21, at 1 (unnumbered); Lamont's Brief at 7. It is settled claims which are not raised in either the Rule 1925(b) statement or in the statement of questions involved are waived. *See* Pa.R.A.P. 1925(b)(4)(vii); *see also Commonwealth v. Given*, 244 A.3d 508, 510 (Pa. Super. 2020) (appellant waived all issues on appeal by failing to raise them in his Rule 1925(b) statement); *Commonwealth v. Harris*, 979 A.2d 387, 397 (Pa. Super. 2009) (holding claim waived when not included in statement of questions involved).

At the hearing on the post-sentence motion, Lamont requested he be credited with ninety days against his revocation sentence and 802 days against the Lycoming sentence, but he acknowledged he had not received information from Monroe County regarding when, or if, they paroled him on the revocation sentence. *See* N.T., 10/24/22, at 12. An extensive conversation took place between Lamont's counsel, the Commonwealth, the trial court, and a court clerk about how to reconcile the problem of consecutive sentences, the lack of information from Monroe County, and Lamont's entitlement to credit for time served. *See id*. at 11-19. The trial court ultimately concluded it had made a sufficient record of the problem to alert the Department of Corrections ("DOC") there was an issue with allocating time served and agreed with the clerk's suggestion to "let DOC figure it out."[13] *Id*. at 18.

This Court has stated, "a defendant is not entitled to 'receiv[e] credit against more than one sentence for the same time served.'" *Commonwealth v. Ellsworth*, 97 A.3d 1255, 1257 (Pa. Super. 2014) (citation omitted); *Commonwealth v. Kunselman*, 410 WDA 2021 (Pa. Super. 2022) (unpublished memorandum at 12) ("[w]hile the nuances of awarding credit

---

[13] However, DOC is required to follow the sentencing courts order. *See Hoyt v. PA Dept. of Corrections*, 79 A.3d 741, 742 (Pa.Cmwlth 2013). Accordingly, even if DOC believed the sentencing order was incorrect, it could not adjust the credit for time served. *See id*.

for time served can be daunting, the hallmark principles in awarding such credit remain as follows: (1) that pursuant to Section 9760, *a defendant must be awarded credit for time served*, and (2) that **credit for time served may only be awarded once**.) (citations omitted and emphases added).[14]  Thus, Lamont is not entitled to "double credit."

Applying those principles to the instant matter, we first conclude Lamont was entitled to credit from January 23, 2020, the date of Lamont's arrest, to February 2, 2020.  Next, the trial court erred in awarding credit to Lamont for the approximately eighteen days between February 3, 2020, and February 21, 2020, as Lamont received credit for those days against the revocation sentence and he is not entitled to double credit.  **See Ellsworth**, 97 A.3d at 1257; Order, 8/17/20, at 1 (unnumbered); Sentencing Order 7/7/22, at 2 (unnumbered).

As to the remainder of the credits, this Court is in the same position as the trial court found itself; we are unable to determine on the existing record what credits Lamont is entitled to against the Lycoming sentence because there is nothing of record which shows when or if Monroe County paroled Lamont.  Pursuant to the revocation sentence order, Lamont could have been effectively paroled from between May 2020 to February 2021.  However, there

---

[14] **See** Pa.R.A.P. 126(b) (unpublished non-precedential memoranda decision of Superior Court filed after May 1, 2019, may be cited for persuasive value).

is nothing of record to show when or if Monroe County paroled Lamont, and thus, no record support for the trial court's apparent belief Monroe County paroled Lamont on August 17, 2020, the day the Monroe County Court of Common Please sentenced him for the violation of probation. **See** Order, 7/7/22, at 2 (unnumbered).

Thus, we are unable to reach the merits of Lamont's legality of sentence claim, but because there is a plain error with respect to the eighteen days in February 2020 on the face of the record, we will vacate the judgment of sentence and remand this matter for clarification and resentencing. Upon remand, the trial court shall:

1.     Obtain the necessary records from either the Monroe County Department of Probation or Parole or from the Lycoming County Jail to enable it to determine when Lamont stopped serving the revocation sentence;

2.     Award Lamont credit for time served for the period of January 27, 2020, to February 2, 2020; and

3.     Award Lamont credit for time served from the day after the completion of the Monroe County Sentence to July 6, 2022.

Accordingly, for the reasons discussed above, we affirm in part and vacate in part the judgment of sentence and remand for resentencing in accordance with the above instructions.

Judgment of sentence affirmed in part and vacated in part. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 01/09/2024