J-A02031-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CALEB ANDREW SCHWEIKARTH | : | |
| | : | |
| Appellant | : | No. 220 WDA 2024 |

Appeal from the Judgment of Sentence Entered January 16, 2024
In the Court of Common Pleas of Bedford County Criminal Division at
No(s): CP-05-CR-0000422-2021

BEFORE: KUNSELMAN, J., MURRAY, J., and BECK, J.

MEMORANDUM BY BECK, J.: **FILED: April 10, 2025**

Caleb Andrew Schweikarth ("Schweikarth") appeals from the judgment of sentence entered by the Bedford County Court of Common Pleas ("trial court") following his convictions of indecent assault – complainant less than thirteen years of age, indecent assault – complainant less than sixteen years of age, and corruption of minors.[1] Schweikarth challenges the admission of testimony from two witnesses under the tender years exception to the rule against hearsay and the discretionary aspects of his sentence. Finding no merit to his claims, we affirm.

Schweikarth's convictions in this case arise from his sexual abuse of his stepdaughter, B.T. In 2018, Jessica Schweikarth ("Ms. Schweikarth"), B.T.'s

---

[1] 18 Pa.C.S. §§ 3126(a)(7), (8), 6301(a)(1)(ii).

mother and Schweikarth's then-wife, filed for divorce from Schweikarth. Ms. Schweikarth indicated that the marriage ended after she discovered that Schweikarth began an inappropriate relationship with her fifteen-year-old cousin, S.D., which included Schweikarth and S.D. spending a substantial amount of time together, tickling each other, lying in bed together, spending the weekend alone together, and inappropriate Facebook messages in which both Schweikarth and S.D. confessed their love for one another. Ms. Schweikarth indicated that she reported the relationship to police, but that nothing resulted from the investigation.

On January 23, 2021, Ms. Schweikarth contacted police after B.T., who was fourteen years old at the time, told her that Schweikarth had sexually abused her from the time she was seven years old until Schweikarth and her mother divorced in 2018. The abuse occurred over a five-year period and began when B.T. was in first grade and continued until she was in sixth grade, at which time B.T., her mother, and her younger half-brother, A.S., moved out of the family home. In addition to reporting the abuse to police, Ms. Schweikarth also petitioned for and received modification of the custody arrangement for A.S.

On January 29, 2021, the Cambria County Child Advocacy Center ("CAC") conducted a recorded interview with B.T. During the interview, B.T. detailed the repeated and long-term sexual abuse by Schweikarth. B.T. recounted that Schweikarth digitally touched and penetrated her vagina, had

her sit on top him and rock back and forth, and have her wrap her hands around his penis and move them up and down until he ejaculated. B.T. told the interviewer that she found Schweikarth's actions confusing and that she did not tell anyone about what he was doing to her at the time because she did not think anyone would believe her. B.T. explained that it was not until she learned about the concept of sexual abuse that she began to realize what Schweikarth had done to her was wrong. B.T. decided to tell her mother about the abuse in January 2021 because she was in a dark place mentally and could not hold it in any longer.

On December 1, 2021, the Commonwealth charged Schweikarth with numerous sex crimes. On September 12, 2023, the Commonwealth filed notice of its intent to present hearsay evidence under the "tender years" exception to the rule against hearsay.[2] The Commonwealth sought to introduce the testimony of O.D., E.P., and A.O., each of whom were minors and friends of B.T.'s that she had confided in regarding Schweikarth. **See** Notice of Intent to Proceed Pursuant to 42 Pa.C.S. § 5985.1, 9/12/2023, ¶¶ 7-8. On October 17, 2023, the day before trial, the court held an in camera hearing to determine the admissibility of this testimony. At the conclusion of the hearing, the trial court ruled that E.P.'s testimony was admissible under

---

[2] 42 Pa.C.S. § 5985.1.

the tender years exception, but that O.D.'s and A.O.'s testimony was not admissible.  *See* N.T., 10/17/2023, at 37-39.[3]

Schweikarth's trial commenced on October 18, 2023.  During trial, after hearing the testimony of Ms. Schweikarth, the trial court reversed its ruling as to the admissibility of O.D.'s testimony and decided that it would permit her testimony under the tender years exception.  N.T., 10/18/2023, at 108-09.  O.D. testified at trial the following day.  *See* N.T., 10/19/2023, at 4-13.

On October 20, 2023, the jury found defendant guilty of the above-identified crimes.  On January 16, 2024, the trial court sentenced Schweikarth to an aggregate term of seven to fourteen years in prison.  On January 24, 2024, Schweikarth filed a motion for reconsideration of sentence, which the trial court denied on January 29, 2024.

Schweikarth timely appealed to this Court.  Both Schweikarth and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925.  Schweikarth presents the following issues for review:

I.      Did the trial court err as a matter of law and/or abuse its discretion in its determination that the testimony of [O.D.] bore a sufficient indicia of reliability to be admissible under the tender years hearsay exception[?]

II.     Did the trial court err as a matter of law and/or abuse its discretion in its determination that the testimony of [E.P.]

---

[3] This cite and any cite to a transcript from October 17, 2023 in this decision is to the notes of testimony from the tender years/motion in limine hearing the trial court held on October 17, 2023.  We note, however, that the transcript of this hearing in the record is unnumbered.  With the assistance of the transcript's table of contents, we added our own numbers for clarity.

bore a sufficient indicia of reliability to be admissible under the tender years hearsay exception[?]

III.     Did the trial court err as a matter of law and/or abuse its discretion in imposing a statutory maximum sentence, as it improperly speculated on questions that were not present before the jury, drew conclusions as to whether the evidence introduced at trial constituted "grooming" [behavior] on [the] part of [Schweikarth], and disregarded testimony that indicated the opposite[?]

Schweikarth's Brief at 5.

Schweikarth's first two issues challenge the trial court's admission of evidence pursuant to the tender years exception to rule prohibiting hearsay testimony, and as such, we address them together. *See* Schweikarth's Brief at 17-34. Schweikarth argues that neither O.D.'s nor E.P.'s testimony contained sufficient indicia of reliability to support the trial court's admission of their testimony under the tender years exception. *See id.*

The standard of review of the admissibility of evidence is well settled:

The admissibility of evidence is at the discretion of the trial court and only a showing of an abuse of that discretion, and resulting prejudice, constitutes reversible error.

The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

***Commonwealth v. Lamont***, 308 A.3d 304, 309 (Pa. Super. 2024) (citation omitted).

"All relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible." Pa.R.E. 402. Evidence is relevant "if it logically tends to establish a material fact in the case or tends to support a reasonable inference regarding a material fact." ***Commonwealth v. Gross***, 241 A.3d 413, 418 (Pa. Super. 2020) (citation omitted). Hearsay is a statement "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Pa.R.E. 801(c). "Hearsay is not admissible except as provided by [the Pennsylvania Rules of Evidence], by other rules prescribed by the Pennsylvania Supreme Court, or by statute." Pa.R.E. 802. One such exception is the tender years provision. 42 Pa.C.S. § 5985.1; ***see also Commonwealth v. Wilson***, 286 A.3d 1288, 1295 (Pa. Super. 2022) (noting that the tender years exception "creates an exception to the general rule against hearsay for a statement made by a child"). "Statements admitted under this section are substantive evidence against the defendant." ***Commonwealth v. Copenhaver***, 316 A.3d 1020, 1023 (Pa. Super. 2024).

The tender years exception states, in relevant part:

(1) An out-of-court statement made by a child victim or witness, who at the time the statement was made was 16 years of age or younger, describing any of the offenses enumerated in paragraph

- 6 -

(2), not otherwise admissible by statute or rule of evidence, is admissible in evidence in any criminal or civil proceeding if:

> (i) the court finds, in an in camera hearing, that the evidence is relevant and that the time, content and circumstances of the statement provide sufficient indicia of reliability; and
>
> (ii) the child either:
>
> > (A) testifies at the proceeding; or
> >
> > (B) is unavailable as a witness.

42 Pa.C.S. § 5985.1(a)(1).[4]

As B.T. testified at trial, the critical elements for the admissibility of hearsay testimony under the tender years exception is (1) the testimony is relevant and (2) there is "sufficient indicia of reliability" based upon the time, content, and circumstances of the statement. *Id.* This Court has held that "indicia of reliability" for purposes of this exception includes, but is not limited to, "the spontaneity of the statements, consistency in repetition, the mental state of the declarant, use of terms unexpected in children of that age, and the lack of a motive to fabricate." *Commonwealth v. Strafford*, 194 A.3d 168, 173 (Pa. Super. 2018) (quotation marks, citation, and brackets omitted); *see also Commonwealth v. Lyons*, 833 A.2d 245, 255 (Pa. Super. 2003) (explaining that courts are not limited to this specific set of factors when determining whether tender years testimony has sufficient indicia of

---

[4] There is no dispute that Schweikarth's case involved crimes enumerated in paragraph (2) of section 5985.1(a). *See* 42 Pa.C.S. § 5985.1(a)(2).

reliability). Under the tender years exception, "a trial court must consider the totality of the circumstances when determining whether a child's out-of-court statement is trustworthy." ***Interest of D.C.***, 263 A.3d 326, 335 (Pa. Super. 2021).

We first address Schweikarth's claim that the trial court abused its discretion in permitting O.D. to testify at trial under the tender years exception. Schweikarth's Brief at 17-27. The record of the in camera hearing reflects that O.D. testified that she had been friends with B.T. since seventh grade and that the two of them had three or four conversations in either seventh or eighth grade over the course of a week about Schweikarth. N.T., 10/17/2023, at 13-15. O.D. testified that B.T. told her she was "scared for her brother, [A.S.]," that she was afraid of Schweikarth "hurting [A.S.] or doing things to [A.S.,]" and she asked O.D. if she should relay these concerns to Ms. Schweikarth. *Id.* at 15. On cross examination, O.D. stated that B.T. never mentioned anything sexual in nature or anything specific as to what B.T. was afraid Schweikarth would do to A.S., and stated unequivocally that B.T. never made any allegations that Schweikarth had touched her inappropriately. *Id.* at 17-18. O.D. testified that she did not want to push B.T. for additional details about what B.T. feared Schweikarth would do to A.S. *Id.* at 15.

At the conclusion of the in camera hearing, the trial court initially determined that O.D.'s testimony was inadmissible under the tender years exception, and explained:

> Based on my examination of the witnesses here, [O.D.], the only thing she can pull out here from her statement is that she testified that [B.T.] said she was worried about [Schweikarth] hurting her brother. She did not say how he would get hurt. There's very little, you know, probative value I think for that testimony. Maybe even confusing or prejudicial for the jury and I think the circumstances of saying that there's really no indicia of reliability there. So, I am going to rule that's not admissible under tender years.

*Id.* at 37-38.

The following day at trial, Ms. Schweikarth testified and as part of her testimony stated that she and Schweikarth had agreed to a custody arrangement regarding A.S. when the two separated in 2018, but when B.T.'s allegations came to light in 2021, she immediately filed for and received a modification of the custody order. N.T., 10/18/2023, at 89-92. Based on Ms. Schweikarth's testimony, the trial court reversed its decision to preclude O.D. from testifying, and explained:

> All right. Given the testimony I have a better understanding of what the timeline is here. I'm going to revisit my ruling on the one witness we had from yesterday. So [O.D.], she testified about the statement from [B.T.] here saying that she was scared for her brother and afraid he would get hurt. I … understand now there's a time frame there where [B.T.] was separated from [Schweikarth], but her brother had --- was still having regular contact with him. So now that statement to me makes sense.
>
> I think there is an indicia of reliability on that. It explains --- I think it goes to explain the Commonwealth's case on the reason that she didn't report it. And a reason why she would still

be concerned for her brother. So I do think there is indicia of reliability on that now. I didn't --- the reason I didn't find there was yesterday is because it had nothing to tie back to her. So there was --- but I didn't understand there was at timeframe where her brother had contact with [Schweikarth], but she did not.

*Id.* at 108-09.

Schweikarth argues that it is unclear how Ms. Schweikarth's testimony regarding the modification to A.S.'s custody arrangement changed the trial court's initial determination that the time, content, and circumstances of B.T.'s statements to O.D. did not have a sufficient indicia of reliability. Schweikarth's Brief at 20. Schweikarth asserts that B.T.'s statements from O.D.'s testimony contain no indicia of reliability other than the consideration of spontaneity. *Id.* at 21. Schweikarth further asserts that the statements were not consistent because B.T.'s conversations with O.D. regarding Schweikarth and her brother only occurred three or four times over the course of one week, none of B.T.'s statements to O.D. related to anything sexual in nature, and there was no use of terms unexpected in children of that age. *Id.* at 21-22.

We find no abuse of discretion in the trial court's decision as to O.D.'s testimony. As Schweikarth concedes, the statements B.T. made to O.D. were spontaneous. *Id.* at 21. Indeed, O.D. testified that she did not push B.T. for additional details regarding her fear of Schweikarth and thus, everything B.T. told O.D. she did so unprompted. *Id.* at 14-18. Although Schweikarth contends that B.T.'s statements were not consistent, the record reflects that B.T. on multiple occasions conveyed to O.D. that she feared Schweikarth was

going to harm her brother. N.T., 10/17/2023, at 14-15. Further, there is nothing in the record to establish B.T. had any motive to fabricate her statements. *See id.* at 14-18. While there was no evidence B.T. used terms unexpected in children of her age at the time she made these statements to O.D., as stated above, this is not a prerequisite for admissibility under the tender years exception, it is simply a factor that courts may consider. *See Lyons*, 833 A.2d at 255.

Additionally, B.T.'s statements to O.D. provided evidence of her mental state. *See* N.T., 10/17/2023, at 14-18; *see also Strafford*, 194 A.3d at 173. The trial court determined that O.D.'s testimony provided evidence relating to why B.T. delayed reporting Schweikarth's abuse—a realization the court came to only after hearing Ms. Schweikarth's testimony regarding A.S.'s custody arrangement. N.T., 10/18/2023, at 108-09. This finding was bolstered by the testimony of Alyssa Ott, an expert on the subject sexual abuse victims and trauma, who explained that child sexual abuse victims always delay reporting their abuse, often because the victims are concerned about "what is going to happen to my family, what is going to happen to my sister and my brothers." N.T., 10/19/2023, at 30.

Based on the foregoing, the totality of the circumstances supports the trial court's use of its discretion in concluding that B.T.'s statements in O.D.'s testimony contained sufficient indicia of reliability to permit O.D. to testify

under the tender years exception. *See Interest of D.C.*, 263 A.3d at 335. No relief is due.

We now turn to Schweikarth's claim that the trial court abused its discretion in permitting E.P. to testify at trial under the tender years exception. *See* Schweikarth's Brief at 28-34. Schweikarth argues that E.P.'s testimony was no different than that of A.O., who the trial court did not permit to testify at trial under the tender years exception. *Id.* Schweikarth maintains that if B.T.'s statements to A.O. did not have sufficient indicia of reliability than B.T.'s statements to E.P. likewise could not contain sufficient indicia of reliability. *Id.*

At the in camera hearing, E.P., B.T.'s best friend, testified that on three separate occasions, in 2020 and 2021, B.T. told her that Schweikarth had previously "touched her inappropriately." N.T., 10/17/2023, at 26. E.P. explained that these conversations typically occurred after it appeared to E.P. that B.T. was in a bad place mentally, and E.P. asked B.T. if something was bothering her. *Id.* at 27. E.P. stated that she did ask B.T. if Schweikarth had engaged in sexual intercourse with B.T., but B.T. indicated that had not happened. *Id.* at 27-28. Although E.P. attempted to elicit additional details from B.T., E.P. testified that B.T. only told her that Schweikarth had touched her inappropriately. *Id.* at 28-29. E.P. indicated that these conversations occurred when she stayed overnight at B.T.'s home. *Id.* at 36.

A.O., B.T.'s former boyfriend, testified that on one occasion, B.T. told him that Schweikarth had "sexually harassed" or "sexually assaulted" her, but he could not remember exactly what she had told him. *Id.* at 19-21. A.O. stated that the conversation occurred either at Ms. Schweikarth's home or B.T.'s grandmother's home. *Id.* at 20. A.O. explained that B.T. provided him no other details and that the conversation lasted less than ten minutes. *Id.* at 21.

At the conclusion of the in camera hearing, the trial court determined that E.P.'s testimony was admissible under the tender years exception, but that A.O.'s was not admissible, and explained:

> [A.O.], there's no details in the statement that [B.T.] told him or that he can recall. He didn't ask for any details. There's no supporting, I think, basis to admit that. I'm going to find that's not admissible under the tender years.
>
> Now that's in I think stark contrast to [E.P.]'s testimony. There's good indicia of reliability of her. One being, that they are best friends at the time the statement was made. She can recall the circumstances in which it was made, where it was made, that it happened during sleep overs, that the victim was upset and that's what prompted the conversation and even though her – [B.T.] does not disclose to her exactly what happened or specifics as to what happened, she does say that he touched her inappropriately, which I think is relevant and I think there's far more supporting circumstances for that statement.
>
> So I'm going to rule … [A.O.] is inadmissible under the tender years statute, but [E.P.] then would be admissible.

*Id.* at 38-39.

The record supports the trial court's determination. It reflects that E.P. had multiple conversations with B.T. about Schweikarth, that E.P. could

remember when and where those conversations occurred, and that B.T. had clearly expressed to E.P. that Schweikarth had touched her inappropriately. *See id.* at 26-36. Conversely, A.O. only discussed Schweikarth with B.T. on one occasion, he could not recall when or where the conversation occurred, and he could not remember whether B.T. told him that Schweikarth had "sexually harassed" or "sexually assaulted" her. *See id.* at 19-21.

Further, we agree that B.T.'s statements to E.P. contained sufficient indicia of reliability because they were spontaneous, as they came after E.P. simply asked her if something was bothering her; they were consistent, as B.T. only ever told E.P. that Schweikarth had touched her inappropriately; and B.T. lacked a motive to fabricate these statements, as B.T. and E.T. were best friends and the conversations mostly occurred during sleepovers. *See id.* at 26-36. We therefore conclude that the trial did not abuse its discretion in concluding that B.T.'s statements in E.P.'s testimony contained sufficient indicia of reliability to permit E.P. to testify under the tender years exception.

In his final issue, Schweikarth argues that the trial court abused its discretion in sentencing him to an aggravated-range sentence based, in part, on testimony relating to his inappropriate relationship with S.D., Ms. Schweikarth's fifteen-year-old cousin. Schweikarth's Brief at 35-43. Schweikarth contends that such a consideration was an impermissible factor for the trial court to contemplate at sentencing. *Id.*

This issue challenges the discretionary aspects of Schweikarth's sentence. *See Commonwealth v. Dodge*, 77 A.3d 1263, 1268 (Pa. Super. 2013) (stating that a claim of a trial court's reliance upon impermissible factors in fashioning a sentence implicates the discretionary aspects of sentence). "The right to appellate review of the discretionary aspects of a sentence is not absolute and must be considered a petition for permission to appeal." *Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1265 (Pa. Super. 2014). To invoke this Court's jurisdiction when challenging the discretionary aspects of a sentence, an appellant must satisfy a four-part test:

> (1) the appellant preserved the issue either by raising it at the time of sentencing or in a post[-]sentence motion; (2) the appellant filed a timely notice of appeal; (3) the appellant set forth a concise statement of reasons relied upon for the allowance of his appeal pursuant to Pa.R.A.P. 2119(f); and (4) the appellant raises a substantial question for our review.

*Commonwealth v. Baker*, 72 A.3d 652, 662 (Pa. Super. 2013). "A defendant presents a substantial question when he sets forth a plausible argument that the sentence violates a provision of the sentencing code or is contrary to the fundamental norms of the sentencing process." *Dodge*, 77 A.3d at 1268 (quotations and citations omitted).

Schweikarth has satisfied the first three requirements of the four-part test by filing a timely notice of appeal, raising his sentencing claim in a post-sentence motion, and including a Pa.R.A.P. 2119(f) statement in his appellate brief. *See* Notice of Appeal, 2/15/2024; Post-Sentence Motion, 1/24/2024; Schweikarth's Brief at 12-16. Additionally, Schweikarth's claim that the trial

court relied on impermissible factors in sentencing him to an aggravated-range sentence raises a substantial question for our review. *See Commonwealth v. McNabb*, 819 A.2d 54, 56-57 (Pa. Super. 2003). We therefore turn our attention to the merits of Schweikarth's sentencing claim.

We review discretionary sentencing claims pursuant to the following standard:

> Sentencing is a matter vested in the sound discretion of the sentencing judge. The standard employed when reviewing the discretionary aspects of sentencing is very narrow. We may reverse only if the sentencing court abused its discretion or committed an error of law. A sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision. We must accord the sentencing court's decision great weight because it was in the best position to review the defendant's character, defiance or indifference, and the overall effect and nature of the crime.

*Commonwealth v. Cook*, 941 A.2d 7, 11-12 (Pa. Super. 2007) (citations omitted).

In determining Schweikarth's sentence, the trial court explained that the two primary bases of the sentence were (1) that Schweikarth offended against his own stepdaughter with whom he had a father-daughter relationship and (2) B.T. was only seven years old when Schweikarth began sexually abusing her while he was over the age of thirty. N.T., 1/16/2024, at 37-38. The trial court further stated:

The other thing that did cause me some concern this --- this weighs less heavily on me, but there are --- there was evidence of the defendant grooming and engaging in predatory behavior not only with this victim, but there was evidence during the trial about texts that were --- we'll just say highly inappropriate with another child in the case. So it --- that is not lost on this court as well, that not only I believe he was engaging in serious predatory behavior, but it was obvious that he --- he was in other cases. That's --- that's a lesser consideration. But I do think it --- it requires to be mentioned.

*Id.* at 39-40.

Schweikarth maintains that his relationship with S.D. was an impermissible consideration by the trial court because he was not criminally charged for his relationship with her. Schweikarth's Brief at 37. Schweikarth denies that he committed any criminal wrongdoing with respect to S.D. *See id.*

The Sentencing Code states that in fashioning a sentence:

[T]he court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant.... In every case in which the court imposes a sentence for a felony or misdemeanor ... the court shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed.

42 Pa.C.S. § 9721(b). Additionally, when we review a sentence, we must consider:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant.

(2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

- 17 -

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the commission.

***Id.*** § 9781(d).

Here, although Schweikarth contends that the trial court improperly considered his relationship with S.D. in determining his sentence, it was Schweikarth himself who insisted that S.D. be permitted to testify at trial. ***See*** N.T., 10/17/2023, at 39-46. Prior to trial, the Commonwealth filed a motion in limine to exclude any reference to S.D., which included any reference to B.T. having witnessed Schweikarth behave inappropriately with S.D. and any reference to inappropriate texts between Schweikarth and S.D. ***Id.*** at 39-44. Schweikarth, however, opposed the Commonwealth's motion because he wanted S.D. to testify in his defense to demonstrate that his relationship with her was not inappropriate or sexual, even though the trial court expressly warned Schweikarth that the Commonwealth would introduce evidence of an inappropriate relationship between Schweikarth and S.D., including their texts, if S.D. testified. ***Id.*** at 40-45. Indeed, the trial court colloquied Schweikarth to ensure that he understood the risks of S.D. testifying. ***Id.*** at 44-46. Despite these warnings, Schweikarth insisted that S.D. testify. ***See id.***

Consequently, at trial, the Commonwealth introduced numerous text messages between Schweikarth and S.D. that revealed that they shared regular, flirtatious communication, including one text from S.D. to

Schweikarth that stated "I absolutely, positively, forever, and always never ending, long lasting eternally, all the time, courageously, extremely, drastically, exceedingly, exceptionally, excessively, absorbingly, extraordinarily, highly, hugely, and terrifically love you." N.T., 10/19/2023, at 70; *see also* N.T., 10/18/2023, at 60-67. Additionally, Ms. Schweikarth testified that S.D. would spend the weekend alone at her home with Schweikarth and that she witnessed Schweikarth and S.D. tickling each other and snapping towels at one another. *Id.* 39, 80.

Schweikarth's attempt to now argue that the trial court erred by considering evidence relating to his relationship with S.D. in determining his sentence is tenuous at best. This evidence was admitted at Schweikarth's insistence. Thus, in addition to his sexual abuse of B.T., the record contained evidence that Schweikarth had a concerning and inappropriate relationship with another minor. The trial court's consideration of such evidence was permissible, as section 9721(b) requires a court to consider the protection of the public in determining a sentence. *See* 42 Pa.C.S. § 9721(b). Accordingly, we conclude that the trial court did not abuse its discretion in considering Schweikarth's relationship with S.D. in determining his sentence.

Moreover, even if the trial court's consideration of Schweikarth's relationship with S.D. was improper, he would not be entitled to relief. We are not required to vacate the sentence if we conclude the court relied upon impermissible factors when imposing its sentence, as "[e]ven if a sentencing

court relies on a factor that should have not been considered, there is no abuse of discretion when the sentencing court has significant other support for its departure from the sentencing guidelines." ***Commonwealth v. Sheller***, 961 A.2d 187, 192 (Pa. Super. 2008).

In this case, Schweikarth's relationship with S.D. was plainly not the sole basis for the trial court's aggravated-range sentence, as the court clearly referred to it as "a lesser consideration." N.T., 1/16/2024, at 39-40. Rather, the trial court's two primary considerations when fashioning his sentence were that Schweikarth sexually abused his stepdaughter, and that he did so beginning when she was seven years old. ***Id.*** at 38-39. Thus, even if the trial court's consideration Schweikarth's relationship with S.D. was inappropriate, we would not need to vacate Schweikarth's sentence because the court referenced significant other reasons for its departure from the guidelines. ***See Sheller***, 961 A.2d at 192.

As we find no merit to either of Schweikarth's tender years exception claims or his challenge to the discretionary aspects of his sentence, he is not entitled to relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 04/10/2025