J-S09002-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RONALD WALKER | : | |
| | : | |
| Appellant | : | No. 785 EDA 2023 |

Appeal from the Judgment of Sentence Entered December 1, 2021
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0005393-2019

BEFORE:  PANELLA, P.J.E., NICHOLS, J., and BECK, J.

MEMORANDUM BY PANELLA, P.J.E.:                      **FILED MAY 1, 2024**

Ronald Walker appeals from his judgment of sentence entered on December 1, 2021, for his convictions of attempted murder, aggravated assault, person not to possess firearms, firearms not to be carried without a license, carrying firearms on public streets or public property in Philadelphia, possessing instruments of crime, simple assault, and recklessly endangering another person.[1] After careful review, we affirm.

Based on the issue presented, we provide only limited facts here.[2] On December 19, 2018, Tory Brown wanted to buy some marijuana. Brown

---

[1] 18 Pa.C.S. §§ 901(a), 2702(a)(1), 6105(a)(1), 6106(a)(1), 6108, 907(a), 2701(a), and 2705, respectively.

[2] The trial court provided a more thorough review of the facts in its Rule 1925(a) opinion. *See* Trial Court Opinion, 7/27/23, at 2-6; Pa.R.A.P. 1925(a).

contacted Walker, believing he could buy marijuana from him. Walker told him where to meet him for the purchase. Brown drove to the location provided by Walker. Walker was not there, so Brown called him. Walker told Brown to drive to another location, 60th Street and Angora Terrace, in the city of Philadelphia. Brown had known Walker for approximately 15 years and knows him as either "Don" or "Dubes." He trusted Walker and did not believe there would be any issue even though recently Brown had been conversing with a woman, Michelle, that has a child with Walker.

Walker walked up to Brown, still seated in the driver's seat of his car near 60th Street and Angora Terrace. Walker leaned into the open driver's window and immediately asked Brown "what's up with Michelle?" N.T. Trial, 3/29/21, at 36. Brown tried to explain, but Walker started shooting at Brown. Even though he was hit, Brown was able to put his car in drive and get away. He pulled into a gas station and started screaming for help. A woman called police for him. Police arrived and transported Brown to the hospital in the back of their cruiser.

While in the cruiser on the way to the hospital, Officer Steven Nelson asked Brown who shot him. Brown told Officer Nelson Don shot him and explained Don is in his phone as Dubes. Brown also provided a description of Don. The entire ride to the hospital, Brown kept saying he was going to die, while quivering and screaming. Brown also explained to Officer Nelson that he met with Don to buy weed, but Don brought up Michelle and then shot him.

Brown later provided the police Walker's Instagram name of "Dudda 7200" and subsequently identified Walker from a photograph.

Brown was treated at the hospital for 15 gunshot wounds, had three surgeries, and multiple blood transfusions. He continues to suffer constant pain and has restricted movement in both his left arm and left leg, which drags as he walks.

Walker proceeded to a bifurcated bench trial on March 29, 2021, and April 1, 2021. Officer Nelson testified at trial before Brown testified. During Officer Nelson's testimony, Walker objected to hearsay regarding what Brown told Officer Nelson on the ride to the hospital. The Commonwealth argued the testimony was admissible pursuant to both the excited utterance and dying declaration exceptions to the hearsay rule. **See id.** at 23, 25-26. The trial court overruled the objection and allowed the officer to provide a full account of what Brown told him on the ride to the hospital.

The trial court convicted Walker of all charges. On December 1, 2021, the trial court sentenced Walker to an aggregated sentence of 15 to 30 years' incarceration. Walker filed a timely post-sentence motion on December 9, 2021. The motion was denied by operation of law on April 18, 2022. Walker did not appeal. However, after a timely Post-Conviction Relief Act petition, 42 Pa.C.S. §§ 9541-9546, his direct appeal rights were reinstated. Walker filed a timely appeal and complied with the trial court's order to file a Rule 1925(b) statement of errors complained of on appeal. **See** Pa.R.A.P. 1925(b).

Walker raises one issue:

> Over trial counsel's objection, the trial court admitted a police officer's testimony about what the victim of a shooting told him about his alleged dispute with the defendant. Was it reversible error to admit this testimony?

Appellant's Brief, at 4.

It is well-established that "[a] trial court's rulings on evidentiary questions are controlled by the discretion of the trial court and will not be reversed absent a clear abuse of that discretion." ***Commonwealth v. Manley***, 985 A.2d 256, 265 (Pa. Super. 2009) (citation omitted). "An abuse of discretion is not a mere error of judgment but, rather, involves partiality, prejudice, bias, ill-will, or manifest unreasonableness." ***Commonwealth v. Hardy***, 918 A.2d 766, 776 (Pa. Super. 2007) (citation omitted).

Walker alleges the trial court erred in allowing hearsay testimony of Officer Nelson regarding what Brown said to Officer Nelson during the drive to the hospital. ***See*** Appellant's Brief, at 13. Walker asserts this hearsay testimony prejudiced him. ***Id.*** at 20-22. We disagree.

Hearsay is a statement that the declarant does not make while testifying at trial and is offered into evidence to prove the truth of the matter asserted. ***See*** Pa.R.E. 801(c). Hearsay is inadmissible unless an exception applies. ***See*** Pa.R.E. 802 ("Hearsay is not admissible except as provided by these rules, by other rules prescribed by the Pennsylvania Supreme Court, or by statute."). One exception is the excited utterance exception. ***See*** Pa.R.E. 803(2). An excited utterance is "[a] statement relating to a startling event or condition,

made while the declarant was under the stress of excitement that it caused."

Pa.R.E. 803(2).

Our Supreme Court has explained the requirements for an excited

utterance as follows:

> A spontaneous declaration by a person whose mind has been
> suddenly made subject to an overpowering emotion caused by
> some unexpected and shocking occurrence, which that person had
> just participated in or closely witnessed, and made in reference to
> some phase of that occurrence which he perceived, and this
> declaration must be made so near the occurrence both in time and
> place as to exclude the likelihood of its having emanated in whole
> or in part from his reflective faculties. There is no clearly defined
> limit as to the time sequence required for a statement to qualify
> as an excited utterance; instead, a fact-specific inquiry is made
> for each case to determine whether the utterance and the event
> are in close enough proximity.

***Commonwealth v. Jones***, 912 A.2d 268, 282 (Pa. 2006) (citations omitted).

Continuing, the Court held that "a statement, which otherwise qualifies as an

excited utterance, is not precluded from falling within the excited utterance

exception to the hearsay rule when made in response to questioning." ***Id.*** at

282-283 (citations omitted).

Moreover, we have held that

> [e]ven if a court does wrongly admit hearsay, this Court will not
> disturb a verdict on that basis alone if the admission constitutes
> harmless error. Error is harmless if: (1) the prejudice to the
> appellant was nonexistent or *de minimus*; (2) the erroneously
> admitted evidence was merely cumulative of other untainted,
> substantially similar and properly admitted evidence; or (3) the
> properly admitted and uncontradicted evidence was so
> overwhelming and the prejudicial effect of the error was so
> insignificant by comparison that the error could not have
> contributed to the verdict.

*Hardy*, 918 A.2d at 777 (citation omitted). "The harmless error doctrine reflects the reality that the accused is entitled to a fair trial, not a perfect trial." *Commonwealth v. Lamont*, 308 A.3d 304, 313 (Pa. Super. 2024) (quoting *Commonwealth v. Hairston*, 84 A.3d 657, 671 (Pa. 2014)).

Here, the evidence, testimony by Officer Nelson about statements made to him by Brown, were hearsay. Walker claims no exception applies that would permit Officer Nelson to recount those statements at trial.[3] *See* Appellant's Brief, at 20. The Commonwealth argues that the hearsay statements were permitted as excited utterances. *See* Appellee's Brief, at 9, 11-12. We agree.

The statements were made by Brown within moments after he was shot. *See* N.T. Trial, 3/29/21, at 26. Certainly, being shot is a "startling event." *See* Pa.R.E. 803(2); *Jones*, 912 A.2d at 282. Brown knew he was being transported to the hospital but did not believe he was going to make it, as he kept screaming at the officers that he was going to die. *See* N.T. Trial, 3/29/21, at 21, 24. During the ride to the hospital, Brown realized he had more injuries than he initially thought. *See id.* at 45, 48 ("I was just in pain once I realized I got shot in the stomach. First[,] I didn't know all of that. I just thought my arm was hit and my wrist. Then I started noticing my leg, my

_____

[3] Walker also argues that the trial court erred by finding the hearsay admissible pursuant to *Commonwealth v. Rounds*, 514 A.2d 630 (Pa. Super. 1986). We agree *Rounds* is inapplicable, but we may affirm a trial court decision on a "basis other than that relied upon by the trial court." *Commonwealth v. Toanone*, 553 A.2d 998, 1001 (Pa. Super. 1989) (citation omitted).

stomach."). Clearly, Brown was still under the stress of being shot. **See** Pa.R.E. 803(2). The fact that Officer Nelson asked Brown who shot him does not change the fact that these statements were excited utterances. **See** **Jones**, 912 A.2d at 282-283. The hearsay statements were admissible as excited utterances, and the trial court did not err in permitting Officer Nelson to testify to Brown's statements.

Furthermore, as the Commonwealth notes, even if the statements were inadmissible, the admission was harmless. **See** Appellee Brief, at 12-13. Brown took the stand immediately after Officer Nelson and testified to the same information. He testified that Walker shot him after asking "what's up with Michelle?" N.T. Trial, 3/29/21, at 36. As such, it was "merely cumulative of other untainted, substantially similar and properly admitted evidence," and Walker is not entitled to relief. **Hardy**, 918 A.2d at 777.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/01/2024