J-S02030-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JOSHUA JORDAN | : | |
| | : | |
| Appellant | : | No. 778 EDA 2025 |

Appeal from the PCRA Order Entered February 28, 2025
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0012114-2013

BEFORE: NICHOLS, J., MURRAY, J., and BENDER, P.J.E.

MEMORANDUM BY MURRAY, J.:                    **FILED MARCH 20, 2026**

Joshua Jordan (Appellant) appeals, *pro se*, from the order dismissing his second petition filed pursuant to the Post Conviction Relief Act (PCRA). **See** 42 Pa.C.S.A. §§ 9541-9546. Appellant asserts the PCRA court improperly denied collateral relief on his claims of (1) a violation of his rights under **Brady v. Maryland**, 373 U.S. 83 (1963),[1] based upon the Commonwealth's suppression of exculpatory evidence of police misconduct, committed in unrelated criminal cases, by officers involved in the investigation regarding Appellant's case; and (2) Appellant's actual innocence of the crimes of which he was convicted. After careful review, we affirm.

---

[1] "Under **Brady**, the prosecution's failure to divulge exculpatory evidence is a violation of a defendant's Fourteenth Amendment due process rights." **Commonwealth v. Ly**, 980 A.2d 61, 75 (Pa. 2009); **Brady**, 373 U.S. at 87.

A prior panel of this Court summarized the evidence adduced at Appellant's jury trial as follows:

[T]he Commonwealth presented the testimony of Philadelphia Police Detectives Omar[r] Jenkins [(Detective Jenkins)] and John Komorowski [(Detective Komorowski)], Philadelphia Police Officers Michael Kilroy, Christian Cruz, Craig Perry, Jesus Cruz, Robert Bakos, and Brian Waltman [(Officer Waltman)], Philadelphia Deputy Medical Examiner Dr. Albert Chu, Unique Riggins [(Riggins or Mr. Riggins)], Kenneth White, Shawn Adams [(Adams or Mr. Adams)], and Isaac Guy [(Guy or Mr. Guy)]. Appellant testified on his own behalf and presented the testimony of Andrea Jordan and Elbert Jordan. Viewed in the light most favorable to the Commonwealth as the verdict winner, the evidence established the following.

On July 14, 201[3], at approximately 9:58 p.m., Craig Jackson [(Jackson)], the decedent, was playing a game of basketball at the courts at B and Olney Streets in Philadelphia. Jackson's team was playing against Appellant's team. As the game progressed, Jackson and Appellant fouled each other, inciting an argument that escalated, with a physical fight seemingly imminent. Appellant left the court, went to his book bag, and withdrew a semiautomatic firearm, pointing it at Jackson. Jackson told Appellant, "If you're going to shoot, go ahead and shoot." Appellant responded by shooting at Jackson multiple times, striking Jackson once in the left chest, and once in the left buttock.

Appellant then fled the scene, placing the gun back into the book bag. Jackson was transported to Einstein Hospital by emergency medical personnel, where he was pronounced dead …. Witnesses [] Riggins and [] Guy saw Appellant later that night. Appellant had changed his clothes and told Riggins and Guy, "I'm not playing with this nigger. If he lives, I'm going to shoot him again."

In police interviews shortly after the shooting, witnesses Riggins and [] Adams both identified Appellant as the shooter from a photo array. Police attempted to arrest Appellant at [his] home on July 20, 2013, but he was not present at the time. Police encountered Appellant on the street on July 21, 2013[,] and asked him to identify himself. Appellant gave a false name, and multiple

birthdates. After being shown a photograph the police had retrieved of the person whose name Appellant was using, Appellant gave his real name and birthdate. Upon his arrest, Appellant stated that "he wasn't on the basketball courts that night."

While in prison awaiting trial, Appellant made a series of phone calls. In one conversation, Appellant told his mother that he "really should've ran." In several other conversations, [Appellant] repeatedly asked whether there were video cameras covering the playground, making sure that his brother[,] Isaiah[,] had "checked every aspect of that park." In another conversation, Appellant and Isaiah urgently discussed the problem that someone named "Pete" had the gun and wanted to "swap it out" instead of destroying it. Isaiah assured Appellant that he would "break that jawn down … and throw it, throw it, throw it," to which Appellant replied, "You got it?" In another conversation, after hearing that the defense investigator confirmed that there were no cameras covering the crime scene, Appellant told Isaiah, "I was at the crib th[]ough wink wink. Know what I'm saying I was at the crib." Isaiah and Appellant also discussed the problem of "the motherfuckers [] saying [that Appellant] did it." Isaiah assured Appellant that they would find out who those people were before court.

*Commonwealth v. Jordan*, 273 A.3d 1052, 429 EDA 2021 (Pa. Super. 2022) (unpublished memorandum at 1-4) (brackets omitted) (quoting PCRA Court Opinion, 4/22/21, at 5-6).

Appellant's jury trial occurred on July 11-15, 2016. The jury found Appellant guilty of one count each of first-degree murder, possession of a firearm without a license, possession of a firearm on the streets of Philadelphia, and possession of an instrument of crime.[2] The trial court sentenced Appellant to life imprisonment based on his murder conviction, plus

_____

[2] 18 Pa.C.S.A. §§ 2502(a), 6106(a)(1), 6108, 907(a).

an aggregate consecutive term of 6½ to 13 years' imprisonment on the remaining convictions.[3]  Appellant timely filed post-sentence motions, which the trial court denied.

Appellant timely filed a direct appeal.  On December 29, 2017, this Court affirmed the judgment of sentence.  ***Commonwealth v. Jordan***, 181 A.3d 1280, 3272 EDA 2016 (Pa. Super. 2017) (unpublished memorandum).  The Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal on July 31, 2018.  ***Commonwealth v. Jordan***, 190 A.3d 592 (Pa. 2018).

On November 26, 2018, Appellant filed a timely *pro se* PCRA petition, his first.  The PCRA court appointed Appellant PCRA counsel.  On March 20, 2020, in lieu of filing an amended PCRA petition, PCRA counsel filed a motion to withdraw as counsel pursuant to ***Commonwealth v. Turner***, 544 A.2d 927 (Pa. 1988) (setting forth the requirements for withdrawal from representation during collateral review), and ***Commonwealth v. Finley***, 550 A.2d 213 (Pa. Super. 1988) (*en banc*) (same).  On January 15, 2021, following appropriate notice pursuant to Pa.R.Crim.P. 907, the PCRA court dismissed

---

[3] The trial court additionally sentenced Appellant to serve three to six months of consecutive imprisonment, for contempt of court, based upon his verbal outburst at sentencing.  ***See*** PCRA Court Opinion, 5/20/25, at 1 (noting that the trial court found Appellant in contempt after he "yelled, 'Fuck you all family,' to the family of [Jackson] after the sentencing." (quoting N.T., 7/15/16, at 19)).

- 4 -

Appellant's petition and granted PCRA counsel permission to withdraw her appearance.

Appellant timely filed a *pro se* appeal from the dismissal of his first PCRA petition. On appeal, Appellant asserted multiple issues, including claims of (1) a **Brady** violation based upon the Commonwealth's suppression of police internal investigation reports/misconduct complaints regarding Detective Jenkins, and evidence of the detective's misconduct committed in an unrelated homicide investigation; and (2) ineffective assistance rendered by Appellant's trial counsel and PCRA counsel for failing to previously raise this **Brady** violation as a basis for relief. **See Jordan**, 273 A.3d 1052 (unpublished memorandum at 7).

This Court affirmed the dismissal order. **See generally id.** Regarding Appellant's claim related to Detective Jenkins's misconduct, we held "the PCRA court correctly concluded that" this claim "lack[s] arguable merit, and, in the alternative, fail[s] to satisfy the prejudice prong of the test for ineffectiveness."[4] **Id.** (unpublished memorandum at 17); **see also id.**

_____

[4] In order to establish a claim of ineffectiveness, a PCRA petitioner must plead and prove three prongs:

> (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) he suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability the result of the proceeding would have been different.

**Commonwealth v. Treiber**, 121 A.3d 435, 445 (Pa. 2015).

(unpublished memorandum at 15-17) (accompanying analysis in affirming PCRA court's determination that Appellant failed to establish a **Brady** violation related to evidence of Detective Jenkins's misconduct).

On May 29, 2024, Appellant filed the instant *pro se* PCRA petition, his second. Appellant asserted he had recently discovered new, exculpatory evidence of misconduct committed by police personnel involved in the instant criminal investigation, including (1) Philadelphia Police Department Detective Ronald Aitken (Detective Aitken), the lead detective in Appellant's case who also recorded the police statement of Riggins; (2) Detective Komorowski, who recorded Guy's police statement; and (3) Officer Waltman, who had served trial subpoenas upon Guy and Riggins. **See** PCRA Petition, 5/29/24, ¶¶ 34-41. Specifically, Appellant claimed that on June 5, 2023, the Philadelphia County District Attorney's Office provided him with Philadelphia Police Department Police Misconduct Disclosures (PMDs), which detailed instances of police misconduct by the three above-mentioned officers, committed in criminal cases unrelated to Appellant's. **Id.** ¶ 19; **see also id.** Appendix. Appellant claimed he established a **Brady** violation related to the Commonwealth's non-disclosure of the evidence of these officers' misconduct. **See id.** ¶¶ 23-75.

According to Appellant, the

misconduct committed by these officers has been part of the pattern and practice of abuse from the Philadelphia Homicide Department going back at least two decades. The Commonwealth failed to disclose any information that would have put

[Appellant's] defense team on notice that there had been multiple instances in which these [officers] had participated in unlawful interrogations and the creation of false identifications.

*Id.* ¶ 42. Appellant further asserted that "[t]his newly discovered evidence could not have been obtained prior to the conclusion of [Appellant's] trial by the exercise of reasonable diligence," *id.* ¶ 44, and that, "[h]ad the jury heard the new evidence[,] it would likely have compelled a different verdict." *Id.* ¶ 63.

Appellant raised an additional claim in his petition, asserting that his "actual innocence" of the crimes charged entitled him to collateral relief.[5] *See id.* ¶¶ 76-89. Appellant averred such a claim "may be a cognizable and free-standing basis for relief under the Eighth and Fourteenth Amendments to the United States Constitution." *Id.* ¶ 77 (citation omitted).

On October 11, 2024, Appellant filed a *pro se* Motion for Leave to Amend and Supplement his PCRA petition (supplemental PCRA petition). Appellant raised a claim of after-discovered evidence of police misconduct committed by Detective Jenkins in unrelated cases, as well as a *Brady* challenge. According to Appellant, "on August 27, 2024," the Commonwealth provided him with a

_____

[5] We observe that although Appellant, on direct appeal, raised challenges to the sufficiency and the weight of the evidence supporting his convictions, this Court found he waived these challenges based upon his failure to preserve them in the trial court. *See Jordan*, 181 A.3d 1280 (unpublished memorandum at 2-4) (finding Appellant's claims waived where he failed to specify, in his court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, which of his convictions were not supported by sufficient evidence or were against the weight of the evidence).

PMD that contained information related to Detective Jenkins's misconduct in other cases. Supplemental PCRA Petition, 10/11/24, at 1. Appellant pointed out that

> Detective Jenkins obtained statements from both [Mr.] Riggins and [Mr.] Adams, the two primary witnesses against [Appellant] at trial. Both [Mr. Riggins and Mr. Adams] purportedly identified [Appellant] as the shooter in their police statements and then recanted those portions of their statements at trial.

*Id.* at 3 (citations omitted). The Commonwealth filed a motion to dismiss on November 21, 2024.

On January 9, 2025, the PCRA court issued a Rule 907 notice of its intent to dismiss the petition without a hearing. On January 27, 2025, Appellant filed a *pro se* Motion for Extension of Time to Respond to 907 Notice. On February 28, 2025, the PCRA court denied Appellant's motion for extension of time, noting that the motion "does not request additional time to respond to the [] 907 Notice, but rather sets forth substantive arguments in opposition to dismissal of [Appellant's] PCRA petition." Order, 2/28/25; *see also id.* (stating that the PCRA court "will consider" the arguments Appellant raised in his motion for extension "in rendering [the court's] final decision.").

By order entered on February 28, 2025, the PCRA court dismissed Appellant's second PCRA petition without a hearing. Appellant timely filed a *pro se* notice of appeal. Appellant and the PCRA court have complied with Pa.R.A.P. 1925.

Appellant presents two issues for our review:

> 1. Did the PCRA court err where it concluded that that the suppressed evidence of misconduct by Detective [] Aitken, Detective [] Komoroski, Detective [] Jenkins, and [Officer Waltman] was not material under **Brady v. Maryland**, 373 U.S. 83 (1963)?
>
> 2. Did the PCRA court err in finding Appellant's claim of actual innocence untimely, where it was based in part on the newly obtained suppressed evidence of misconduct by Detective [] Aitken, Detective [] Komorowski, Detective [] Jenkins, and [] Officer [] Waltman, who participated in obtaining the unreliable evidence used to convict Appellant at trial?

Appellant's Brief at 6 (some capitalization modified).

We review the dismissal of a PCRA petition to determine "whether the PCRA court's factual findings are supported by the record and free of legal error." **Commonwealth v. Thomas**, 323 A.3d 611, 620 (Pa. 2024). Our scope of review "is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the PCRA court level." **Commonwealth v. Conforti**, 303 A.3d 715, 725 (Pa. 2023) (citation omitted). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." **Commonwealth v. Gibson**, 318 A.3d 927, 933 (Pa. Super. 2024) (citation omitted).

A PCRA petitioner bears "the burden of persuading th[e appellate c]ourt that the PCRA court erred and that such error requires relief." **Commonwealth v. Montalvo**, 205 A.3d 274, 286 (Pa. 2019). Further, "[w]here a PCRA petition does not raise a 'genuine issue of material fact,' the reviewing court is not required to hold an evidentiary hearing on the petition."

*Commonwealth v. Simpson*, 66 A.3d 253, 260 (Pa. 2013) (citation and brackets omitted).

Under the PCRA, all petitions must be filed within one year of the date the judgment becomes final. 42 Pa.C.S.A. § 9545(b)(1). For purposes of the PCRA, "a judgment becomes final at the conclusion of direct review … or at the expiration of time for seeking the review." *Id.* § 9545(b)(3). The PCRA's timeliness requirements are jurisdictional in nature, and a court may not address the merits of the issues raised if the PCRA petition was not timely filed. *Commonwealth v. Albrecht*, 994 A.2d 1091, 1093 (Pa. 2010).

Here, because Appellant did not petition the United States Supreme Court for further review following our Supreme Court's July 31, 2018, order denying allowance of appeal, his judgment of sentence became final on October 29, 2018. *See* 42 Pa.C.S.A. § 9545(b)(3); *see also* U.S. SUP. CT. R. 13 (providing a petition for writ of *certiorari* must be filed within 90 days after the entry of the order denying discretionary review). Accordingly, Appellant's second PCRA petition is facially untimely.

Nevertheless, Pennsylvania courts may consider an untimely PCRA petition if the petitioner explicitly pleads and proves one of the three exceptions to the PCRA's time limitation set forth in 42 Pa.C.S.A. § 9545(b)(1)(i-iii). These exceptions provide that a PCRA petition may be filed when the petition alleges, and the petitioner proves

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the

- 10 -

claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

*Id.* Furthermore, any petition attempting to invoke one of the timeliness exceptions "shall be filed within one year of the date the claim could have been presented." *Id.* § 9545(b)(2).

Here, in his PCRA petition, Appellant invokes the timeliness exceptions for newly-discovered facts and governmental interference, set forth in 42 Pa.C.S.A. § 9545(b)(1)(i) and (ii), respectively. *See* PCRA Petition, 5/29/24, at 1-2. Additionally, Appellant pled that he filed his petition within one year of the date that he discovered the new evidence upon which he predicates his claim of entitlement to collateral relief. *Id.* at 2.

To establish the newly-discovered fact exception, the petitioner bears the burden of pleading and proving "(1) the facts upon which the claim was predicated were unknown[;] and (2) they could not have been ascertained by the exercise of due diligence." *Commonwealth v. Cox*, 146 A.3d 221, 227 (Pa. 2016) (citation omitted). The focus of the newly-discovered fact exception "is on the newly discovered facts, not on a newly discovered or

- 11 -

newly willing source for previously known facts." ***Commonwealth v. Lopez***, 249 A.3d 993, 1000 (Pa. 2021) (citation, emphasis, and footnote omitted).

"Although a ***Brady*** violation may fall within the governmental interference exception, the petitioner must plead and prove that the failure to previously raise these claims was the result of interference by government officials, and that the information could not have been obtained earlier with the exercise of due diligence." ***Commonwealth v. Abu-Jamal***, 941 A.2d 1263, 1268 (Pa. 2008) (citation omitted); 42 Pa.C.S.A. § 9545(b)(1)(i).

"Once jurisdiction is established, a PCRA petitioner can present a substantive after-discovered-evidence claim" under PCRA subsection 9543(a)(2)(vi). ***Commonwealth v. Reeves***, 296 A.3d 1228, 1232 (Pa. Super. 2023); 42 Pa.C.S.A. § 9543(a)(2)(vi).

> [T]o prevail on an after-discovered evidence claim …, a petitioner must prove that (1) the exculpatory evidence has been discovered after trial and could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict.

***Commonwealth v. Burton***, 158 A.3d 618, 629 (Pa. 2017).

With respect to Appellant's first issue, which asserts ***Brady*** violations based upon new, exculpatory evidence of police misconduct, both the Commonwealth and the PCRA court agree that this claim satisfies the requirements of the newly-discovered fact exception. ***See*** Commonwealth Brief at 12 n.2 ("Appellant's ***Brady*** claim has arguably met the new fact exception to the PCRA time-bar[,] as he filed his PCRA petition within one year

- 12 -

of receiving the Philadelphia Police Department [PMDs].”); PCRA Court Opinion, 5/20/25, at 7 (same). We agree, and therefore, proceed to address the merits of Appellant's issues.

Appellant contends the PCRA court improperly denied relief on his ***Brady*** claim asserting the Commonwealth's suppression of evidence of police misconduct, committed in unrelated cases, by Detective Aitken, Detective Komoroski, Detective Jenkins, and Officer Waltman. ***See*** Appellant's Brief at 16-32. According to Appellant, information contained in the PMDs he attached to his PCRA petition establishes the following:

- Officer Waltman, prior to Appellant's jury trial, "was found liable by a jury for a malicious prosecution against Khanefah Boozer," wherein Officer Waltman knowingly gave false testimony in connection with Boozer's criminal proceedings. ***Id.*** at 18;

- "The disclosure concerning Detective Komorowski reveals several incidents of misconduct leading to his separation from the police department that took place after [Appellant's] conviction became final but that nonetheless cast doubt on his credibility and the reliability of the witness he interviewed, [Mr.] Guy." ***Id.*** at 17;

- Regarding Detective Aitken, "[i]n 1995, the Internal Affairs Division sustained allegations that Detective Aitk[e]n physically abused a suspect he arrested and then acted unprofessionally toward onlookers at the scene." ***Id.***;

- Finally, regarding Detective Jenkins, Appellant asserts, without elaboration, that the detective (1) has "a lengthy rap sheet of his own," ***id.*** at 27, and (2) interviewed, in connection with the instant murder investigation, Riggins and Adams, both of whom "testified that their statements were altered." ***Id.*** at 20.

Appellant contends that the Commonwealth violated *Brady*, where "[d]espite being aware of disclosable misconduct evidence relating to [the subject] officers, the Commonwealth did not provide it to the defense" prior to or at trial. *Id.* at 19.

According to Appellant, "the evidence of police misconduct would have been favorable at trial in light of the witnesses' testimony, some of whom partially recanted their police statements" inculpating Appellant, including Guy, Riggins, and Adams. *Id.* at 30; *see also id.* at 21-26 (detailing these witnesses' testimony). Appellant concedes that "Guy, Riggins, and Adams[] did not specifically allege any police misconduct in connection with their interviews" conducted in the instant case by the respective subject officers. *Id.* at 29. However, Appellant points out that to obtain "relief on the *Brady* claim, [he] needs only to establish a 'reasonable probability of a different result,' had the evidence of prior misconduct been available," a standard that, Appellant maintains, he met. *Id.* (citation omitted).

Preliminarily, we recognize that a "*Brady* claim is cognizable on collateral appeal under the PCRA." *Simpson*, 66 A.3d at 264 n.16 (citing, *inter alia*, 42 Pa.C.S.A. § 9543(a)(2)(vi)). A *Brady* claim "presents a question of law, for which our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Bagnall*, 235 A.3d 1075, 1084 (Pa. 2020). To establish a *Brady* violation, a petitioner "must show that: (1) the prosecution concealed evidence; (2) which was either exculpatory evidence or

impeachment evidence favorable to him; and (3) he was prejudiced by the concealment." *Simpson*, 66 A.3d at 264. "The defendant bears the burden of demonstrating that the Commonwealth withheld or suppressed evidence." *Commonwealth v. Smith*, 17 A.3d 873, 887 (Pa. 2011). To establish prejudice, a petitioner must demonstrate a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Simpson*, 66 A.3d at 264 (citation omitted). *Cf. Commonwealth v. Dennis*, 17 A.3d 297, 308 (Pa. 2011) ("Conversely, the mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial does not establish materiality in the constitutional sense." (citation and brackets omitted)).

> In evaluating whether a reasonable probability of a different outcome has been demonstrated, the question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.

*Commonwealth v. Johnson*, 335 A.3d 685, 717 (Pa. 2025) (citation omitted). In the PCRA context, a petitioner must demonstrate that the alleged *Brady* violation "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *Ly*, 980 A.2d at 76 (citation omitted).

Further, our Supreme Court has stated that "*Brady* does not require the disclosure of information that is not exculpatory but might merely form the groundwork for possible arguments or defenses." *Commonwealth v.*

***Paddy***, 15 A.3d 431, 450 (Pa. 2011) (citation and quotation marks omitted); ***see also Ly***, 980 A.2d at 75 (stating that the "prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial." (citation omitted)).

Instantly, insofar as Appellant raises a ***Brady*** claim premised on evidence of police misconduct committed by Detective Jenkins, this claim is not cognizable, as it is previously litigated. To be eligible for relief under the PCRA, the petitioner must show that "the allegation of error has not been previously litigated or waived." 42 Pa.C.S.A. § 9543(a)(3). "An issue is previously litigated if 'the highest appellate court in which [an appellant] could have had review as a matter of right has ruled on the merits of the issue.'" ***Commonwealth v. Cousar***, 154 A.3d 287, 296 (Pa. 2017) (quoting 42 Pa.C.S.A. § 9544(a)(2)). Our Supreme Court has stated that **"a PCRA petitioner cannot obtain review of claims that were previously litigated by presenting new theories of relief … to relitigate previously litigated claims."** ***Commonwealth v. Bond***, 819 A.2d 33, 39 (Pa. 2002) (emphasis added); ***Commonwealth v. Lambert***, 797 A.2d 232, 240 (Pa. 2001) (same).

Here, in connection with Appellant's appeal from the dismissal of his first PCRA petition, this Court considered and rejected his ***Brady*** claim related to evidence of Detective Jenkins's misconduct. ***See Jordan***, 273 A.3d 1052

(unpublished memorandum at 15-17). Appellant is precluded from obtaining review of this previously litigated claim by relying upon new theories of relief, including more recent PMDs and other allegations of Detective Jenkins's misconduct. **Bond**, 819 A.2d at 39. Accordingly, Appellant's present claim implicating Detective Jenkins is not cognizable as being previously litigated. **See** 42 Pa.C.S.A. § 9543(a)(3).

In its Rule 1925(a) opinion, the PCRA court determined that Appellant failed to establish a **Brady** violation with regard to his claims implicating Detective Aitken, Detective Komoroski, and Officer Waltman (collectively, "the subject officers"):

> [Appellant's] **Brady** claim fails because the record establishes that he was not prejudiced by the Commonwealth's failure to disclose the misconduct history of the [subject officers]. In [Appellant's] case, Detective Aitken took a statement from Commonwealth witness [] Riggins, and Detective Komorowski took a statement from Commonwealth witness [] Guy. N.T., 7/11/16, at 256; N.T., 7/13/16, at 45, 174. … Officer Waltman served a subpoena on Mr. Riggins. **Id.** at 188-91. **None of these Commonwealth witnesses alleged misconduct against any of the** [**subject officers**] **at any time. See** N.T., 7/11/16, at 252-56; N.T., 7/12/16, at 121-40; N.T., 7/13/16, at 148-54.
>
> Additionally, **the record establishes that any subsequent recantations of these witnesses resulted from fear of retaliation for cooperating with the government, not because their initial statements to police were coerced.** Specifically, when asked about the day of the shooting, Mr. Riggins testified at his trial deposition, "I am not going to make it through the summertime, man I'm going to be dead before September," indicating his fear of retaliation for testifying against [Appellant]. N.T., 4/1/16, at 76-78; N.T., 7/12/16, at 32. Moreover, Mr. Riggins testified at trial that he did not want to testify because, where he comes from, it could get him killed. **See** N.T., 7/12/16, at 22-23. Mr. Adams also testified at his trial

- 17 -

deposition about the risk he faced for testifying, saying that he heard around his neighborhood that there was a "price" on his head. N.T., 4/1/16, at 47, 64-65; N.T., 7/12/16, at 152-54. Additionally, Mr. Guy testified at trial that, initially, he did not tell police that he saw [Appellant] running from the scene of the shooting because he was scared, and "snitches get stitches, so you don't want to rat on that person." N.T., 7/13/16, at 144-45.

Furthermore, the Commonwealth presented compelling evidence that established [Appellant's] guilt. Mr. Riggins, Mr. Adams, and Mr. Guy all identified [Appellant] as the shooter in photo arrays following the murder. N.T., 4/1/16, at 29-30, 93; N.T., 7/11/16, at 268-69; N.T., 7/12/16, at 143-46; N.T., 7/13/16, at 46, 55-56, 176-77. Mr. Riggins also testified that he was playing basketball with [Appellant] and [] Jackson, saw [Appellant] and [] Jackson foul each other, and saw [Appellant] retrieve a gun from his bag and shoot [] Jackson. N.T., 4/1/16, at 73-74, 79-82; N.T., 7/11/16, at 236-47; N.T., 7/12/16, at 43-44. The Commonwealth presented evidence that, later on the night of the shooting, [Appellant] told Mr. Riggins, "I'm not playing with this nigger. If he lives, I'm going to shoot him again." N.T., 4/1/16, at 89; N.T., 7/11/16, at 260-61; N.T., 7/12/16, at 17; N.T., 7/13/16, at 44. This is corroborated by the testimony of Mr. Guy, who worked at the pool near the same basketball court on the night of the shooting and testified that he heard gunshots and then saw [Appellant] running from the scene with a gun. N.T., 7/13/16, at 131-37, 150. Mr. Guy similarly testified that, later that night, [Appellant] told Mr. Guy "what happened and why he did it," and that "if he see [Jackson] again, he'll do it again." *Id.* at 147-48.

Additionally, **the statements and testimony from Mr. Riggins, Mr. Guy, and Mr. Adams were corroborated by compelling evidence of** [**Appellant's**] **consciousness of guilt.** Specifically, the Commonwealth presented [evidence at trial of Appellant's] phone calls from prison, in which [he] told his mother that he "really should've ran" and instructed his brother to "[check] every aspect of [the] park" where the shooting occurred for cameras. N.T., 7/12/16, at 227-33; Commonwealth Exhibit 12 (Prison Transcripts); Commonwealth Exhibit 43 (Prison Tape). [Appellant's] phone calls from prison also corroborated the witness[es]' fear of retaliation. Particularly, one conversation involved an unknown male who said, "When we go to [the] preliminary [hearing and] we find out who telling on you that is

the only thing, when we find out who telling on you then we … find out how we going to go about this." N.T., 7/12/16, at 227-33; Commonwealth Exhibit 12 (Prison Transcripts); Commonwealth Exhibit 43 (Prison Tape). All of this is strong circumstantial evidence that [Appellant] was responsible for shooting [] Jackson.

Accordingly, the evidence of [the subject officers'] unrelated misconduct does not give rise to a reasonable probability that, had the evidence been disclosed, the result of [Appellant's trial] would have been different. *See Simpson*, 66 A.3d at 264. Therefore, [Appellant] is not entitled to relief under *Brady*[,] and the [PCRA c]ourt did not err in dismissing [Appellant's] claim.

PCRA Court Opinion, 5/20/25, at 8-11 (footnote omitted; emphasis added; some record citations modified). The PCRA court's findings are supported by the record and the law, and we agree with its determination.

Contrary to Appellant's claim, the Commonwealth had no obligation under *Brady* to disclose to the defense evidence of misconduct committed by the subject officers in cases wholly unrelated to Appellant's. Appellant failed to establish the materiality of such evidence absent some proof that the subject officers committed misconduct in **Appellant's** case. *See*, *e.g.*, *Commonwealth v. Rahman*, 309 A.3d 1071, 2023 Pa. Super. Unpub. LEXIS 2905, 2023 WL 8244825 (Pa. Super. 2023) (unpublished memorandum at 15)[6] (upholding PCRA court's rejection of the appellant's *Brady* claim based on evidence of police misconduct, where appellant failed to demonstrate that evidence of police misconduct "in wholly unrelated cases was material to [the

_____

[6] Non-precedential decisions filed after May 1, 2019, may be cited for their persuasive value. *See* Pa.R.A.P. 126(b).

a]ppellant's case or the PCRA proceedings, such that its omission resulted in prejudice to [the a]ppellant."). Appellant has failed to (1) point to evidence in the record to show any indication that the subject officers committed misconduct in the instant case; or (2) articulate what evidence he would present at an evidentiary hearing beyond his generalized assertions of the subject officers' misconduct in unrelated cases. In sum, we cannot conclude that the purported nondisclosure of the misconduct of the subject officers "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *Ly*, 980 A.2d at 76 (citation omitted).

Furthermore, to the extent Appellant would proffer the subject officers' misconduct solely for the purposes of impeachment, he is unable to satisfy the after-discovered evidence test on this basis. *Burton*, 158 A.3d at 629 (to establish an after-discovered evidence claim under subsection 9543(a)(2)(vi), the petitioner must prove, *inter alia*, that the exculpatory evidence is not being offered solely to impeach credibility); *see also Commonwealth v. Brown*, 134 A.3d 1097, 1109 (Pa. Super. 2016) (upholding PCRA court's rejection of Brown's claim that he was entitled to an evidentiary hearing regarding after-discovered evidence based on newspaper articles detailing the misconduct of two Philadelphia Police detectives in cases unrelated to Brown's, where, absent proof that these two officers had committed misconduct in Brown's

case, evidence of their misconduct committed in other cases could only be used by Brown to impeach the officers' credibility).

Based upon the foregoing, the PCRA court properly determined that Appellant failed to establish any **Brady** violation, or an after-discovered evidence claim under subsection 9543(a)(2)(vi).[7]  Appellant's first issue merits no relief.

In his second issue, Appellant argues the PCRA court erred in denying collateral relief on his "actual innocence" claim, which, he asserts, "may be a cognizable and free-standing basis for relief under the Eighth and Fourteenth Amendments to the United States Constitution."  Appellant's Brief at 34 (citing

---

[7] In Appellant's argument section, he raises an additional issue, under a separate heading, asserting that he "is entitled to relief because the evidence of police misconduct constitutes after-discovered evidence requiring a new trial[.]"  Appellant's Brief at 33 (bold omitted).  However, Appellant did not raise this issue in either his (1) court-ordered Rule 1925(b) concise statement of errors complained of on appeal; or (2) brief's statement of questions presented.  Therefore, Appellant waived this issue.  **See Commonwealth v. Lamont**, 308 A.3d 304, 316 n.12 (Pa. Super. 2024) ("It is settled claims which are not raised in either the Rule 1925(b) statement or in the statement of questions involved are waived."); Pa.R.A.P. 2116(a) (stating that "[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby."); Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement … are waived.").  Nevertheless, even if not waived, this claim would not entitle Appellant to relief, based upon our determination that his **Brady** claim asserting newly-discovered evidence of the subject officers' misconduct in unrelated cases does not constitute after-discovered evidence under 42 Pa.C.S.A. § 9543(a)(2)(vi).

*Herrera v. Collins*, 506 U.S. 390, 406 (1993)).[8]   According to Appellant, "Pennsylvania's history of fiercely protecting its citizens' rights against arbitrary state action supports the recognition of a freestanding innocence claim under the state due process clause."  *Id.* at 35; *see also id.* ("As a matter of substantive due process, Pennsylvania appellate courts have regularly held our state constitution provides individuals with greater protection than its federal counterpart.").

Contrary to Appellant's suggestion, *Herrera* and its progeny entitle him to no relief.  As this Court recognized in *Commonwealth v. Brown*, 143 A.3d 418 (Pa. Super. 2016), decisions such as *McQuiggin* and *Herrera*, which apply the federal *habeas corpus* statute of limitations, are "irrelevant to our construction of the timeliness provisions set forth in the PCRA."  *Id.* at 420-21 (citing *Commonwealth v. Saunders*, 60 A.3d 162, 165 (Pa. Super. 2013) (holding that decisions implicating federal *habeas corpus* law are "of no

_____

[8] The United States Supreme Court, in *McQuiggin v. Perkins*, 569 U.S. 383 (2013), observed that the Court "ha[s] not resolved whether a prisoner may be entitled to *habeas* relief based on a freestanding claim of actual innocence." *Id.* at 392 (citing *Herrera*, 506 U.S. at 404-05).  However, based on various decisions by that Court, the *McQuiggin* Court held that "a credible showing of actual innocence may allow a prisoner to pursue his constitutional claims … on the merits notwithstanding the existence of a procedural bar to [collateral] relief."  *Id.*  Quoting *Herrera*, the *McQuiggin* Court noted, "This rule, or fundamental miscarriage of justice exception, is grounded in the 'equitable discretion' of *habeas* courts to see that federal constitutional errors do not result in the incarceration of innocent persons."  *Id.* (quoting *Herrera*, 506 U.S. at 404).

moment with respect to the way Pennsylvania courts apply the plain language of" the PCRA's time-bar exceptions)).

Instantly, the PCRA court, citing **Brown**, correctly determined that Appellant's bald claim of his actual innocence fails to establish any PCRA time-bar exception, and thus, the court lacked jurisdiction to address it.[9]  **See** PCRA Court Opinion, 5/20/25, at 11; **Brown**, 143 A.3d at 420-21.  We agree. Accordingly, Appellant's second issue merits no relief.

Based upon the foregoing, as the PCRA court correctly concluded that Appellant was not entitled to collateral relief on either of his claims, the court did not err or abuse its discretion in dismissing Appellant's second PCRA petition.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/20/2026

_____

[9] Further, even if the PCRA court had jurisdiction to entertain Appellant's claim of his actual innocence, it is belied by the record.  At trial, the Commonwealth introduced substantial evidence of Appellant's guilt, including (1) statements from multiple eyewitnesses who identified Appellant as the shooter; and (2) Appellant's inculpatory post-arrest statements made in recorded telephone calls from prison, in which he discussed creating a false alibi, disposing of the firearm used in the shooting, his regrets about not fleeing from the authorities prior to his arrest, and identifying and confronting witnesses who implicated Appellant as the perpetrator.